Ruffin, C.- J.
 

 The’ points arising upon the record in this case were, We- think, correctly apprehended, and decided upon proper principles in the Superior Court.-
 

 
 *114
 
 The offence charged is, that the defendant disturbed “a assembly, commonly called a Quarterly Meeting Conference,” by certain acts set forth in the indictment. But ^ ^oes not state the purpose of that assembly, and, particularly, that it was for divine worship. Without possessing precise information of the province of that body, which is known as “ Quarterly Meeting Conference,” among one of our respectable religious sects, we can only say, that we suppose it is not a meeting for divine service by worship, but for the secular service of the society in its temporal matters, oí-as a local ecclesiastical tribunal, for the purposes of discipline. But whether that be the true character of the body or not, certainly we are so to consider it on this indictment; for it expressly stales, that, “after the religious services and worship of Almighty God were finished and concluded,” the defendant committed the disorderly acts charged. Calling it “a religious assembly,” means nothing more in this case than “an assembly of religious persons,” who were disturbed by the defendant, but not while engaged in the exercise of their mode of .worship. In the opinion of the court, that, although a grossly indecent and immoral act, is not a criminal offence, punishable by indictment. There was no interference with the rights and duties of conscience, which are secured both to individuals and congregations, by the guaranty in the constitution oí liberty of worship. That is an offence, which cannot be described either in a statute or an indictment, without the use of such general terms as “divine worship,” “divine service,” “religious worship or service,” or the like ; or by some more special phrase, denoting the interruption or hindrance of the performance of a specific part of the religious service adopted by the church or sect. Thus our statutes of 1800 and 1807, (Rev. St. c. 99, s. 8, 10,). punish disorderly conduct at churches or meeting houses, at which '■ persons are assembled for divine worship.” In like manner the precedents, whether at common law or under the English acts of parliament, use the same language some of which may be found, 2 Chitty’s C. L. 21, 24 to 84. In
 
 Jasper’s
 
 case, 4 Dev. 323, the indictment
 
 *115
 
 was conformable to those precedents, using, in one part of it, the words “ public worship of God,” and in another part, “ during the performance of divine service.” Nor can the defendant be regarded as hindering a legal — as contradistin-guished from a religious — duty, in the performance of which, men are brought together in masses, in order to exercise political functions, or execute public service, such as attending an election, or holding a court. The interruption of such a duty by violence or menace, must be an injury to many individuals, and a detriment to the community ; the duty being imposed by public law, and concerning the public welfare. But the association, on which this outrage was prac-tised, though formed for purposes undoubtedly lawful and useful, is yet entirely voluntary. Not.being required by the law, nor, like an assemblage of religious worshippers, its inviolability assured by the constitution, the law cannot treat, as public wrongs, acts which incommode it as a private, secular and voluntary association, hut can only punish them, when they amount to offences against the persons of the individuals, who compose the meeting, or some other specific offence. There must be some such restriction upon the doc-trino, else we should be obliged to hold any conduct indictable, which annoys tyvo or more persons called together for a purpose not unlawful; which would be extending the principle much farther than it has been, or ought to be carried.
 

 It was. not even contended at the bar, that the indictment could be sustained, as one for blasphemy, by that part of it which states, the “ridiculing and denouncing, in an insulting manner, the doctrines of our Saviour, as had been set forth and preached by the minister, during the divine service,” which had preceded, and it was properly not so contended. For, if an indictment for blasphemy will lie in this State, the present is clearly not one, since it does not state-the doctrines set forth by the preacher, nor the blasphemous language of the defendant, whereby it might appear that the doctrine of the preacher is adoctrine of Christianity, as known to the law, and that the object of the defendant
 
 *116
 
 was not to discuss a controverted point of that religion,
 
 1
 
 °
 
 1
 
 but maliciously .to undermine or subvert the whole system.
 

 In no point of view, therefore, can the indictment be supported ; and it must accordingly becertified, that there is no error in the decision under appeal.
 

 Per. Cujriajsi. Ordered to be certified accordingly.